1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAYAN ABOUDI, individually and on behalf of all others similarly situated,<br><br>                                    Plaintiffs,<br><br>v.<br><br>T-MOBILE USA, INC. and DOES 1 through 10, inclusive, and each of them,<br><br>                                    Defendant. | Case No.:  12cv2169 BTM(NLS)<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MOTION FOR ATTORNEY'S FEES, COSTS, AND INCENTIVE PAYMENT** |

Plaintiff Sayan Aboudi has filed a Motion for Final Approval of Class Action Settlement and a Motion for Attorney's Fees, Costs, and Incentive Payment.  On July 27, 2015, the Court held a hearing on the motions.  For the reasons discussed below, Plaintiff's motions are **GRANTED**.

## I. PROCEDURAL BACKGROUND

On September 4, 2012, Plaintiff commenced this class action lawsuit.  The Complaint alleged that Defendant T-Mobile USA, Inc. ("Defendant" or "T-Mobile"), violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, et seq., by placing autodialed calls, using an "automatic telephone dialing system"

1

("ADTS") to the cellular telephones of persons without "prior express consent." Plaintiff sought statutory damages of $500 for each negligent violation and $1,500 for each intentional violation.

After filing this action, Class Counsel and Defendant's counsel engaged in extensive settlement discussions and participated in a two-day mediation before Hon. Herbert B. Hoffman (Ret.), a mediator with Judicate West.

On July 17, 2014, the Court held a hearing on Plaintiff's first motion for preliminary approval.  At the hearing, the Court expressed concern regarding the adequacy of the settlement, which would provide a $90 maximum pay-out to each class member.  Counsel requested leave to withdraw the motion, which the Court permitted.

Subsequently, the parties scheduled a third day of mediation before Judge Hoffman and reached a new settlement.  In an order filed on March 23, 2015, the Court granted preliminary approval of the settlement.

## II.  DISCUSSION

### A.  Motion for Final Approval

#### 1.  Class Certification

Plaintiff seeks final certification of the Settlement Class, defined as:

All individuals in the United States who answered one or more Collections Calls placed by T-Mobile to a wireless telephone number using an automatic telephone dialing system and not manually dialed, or an artificial/prerecorded voice ("ATDS Calls"), either directly, or

2

indirectly through an outsourced vendor placing calls on T-Mobile's behalf, between September 4, 2008 and September 4, 2012 and who:

(a) Are not current or former T-Mobile customers;
(b) Received Collections Calls from T-Mobile on a non-T-Mobile US wireless telephone number that was not provided to T-Mobile by the customer as a contact number;
(c) Did not consent to receive those calls: and
(d) Did not indicate that the call had reached the correct party.

Excluded from the Class are any employees of T-Mobile, its parent, affiliates, or subsidiaries; the Judge and Magistrate Judge to whom the Action is assigned; and any member of those Judges' staffs or immediate families.[1] The Class also does not include individuals who did not receive calls placed by T-Mobile, either directly or indirectly, as set forth above, but did receive calls from a third-party collections agency or business placing calls on its own behalf in an attempt to collect debts owed on T-Mobile accounts.

To certify a settlement class, the requirements of Rule 23 must generally be satisfied. Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998). However, the Court need not inquire whether the case, if tried, would present management problems. Amchem Prods., Inc. v. Windsor, 521 U.S. 1, 613 (1997).

---

[1] Under 28 U.S.C. § 455(b)(5)(iii), any judge of the United States shall disqualify himself if he or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding.  The Court amends the Settlement Class definition to exclude such individuals as well.

1    Rule 23(a) sets forth four prerequisites for class certification: (1) numerosity;

2  (2) commonality; (3) typicality; and (4) adequacy of representation.  The Court finds

3  that all four of these requirements have been satisfied.

4    The numerosity requirement is satisfied if "the class is so numerous that

5  joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).   The proposed

6  class is numerous, consisting of thousands of potential class members.   The

7  estimated class size is 106,000 Class Members.

8    There are common questions of fact and law concerning calls placed

9  between September 4, 2008 and September 4, 2012, using autodialing equipment,

10  without prior express consent.  Plaintiff's claims are typical because he claims that

11  he was not a T-Mobile subscriber when he received a call by Defendant on his

12  cellular phone via an automatic telephone dialing system without having given his

13  prior consent.

14    It appears that Plaintiff and his counsel will fairly and adequately protect the

15  interests of the class.  They have vigorously prosecuted the case thus far and it

16  does not appear that there are any conflicts of interest.

17    In addition to satisfying the requirements of Rule 23(a), a proposed class

18  must qualify for certification under one of the categories in Rule 23(b).  Plaintiff

19  seeks certification under Rule 23(b)(3).  Certification is proper under Rule 23(b)(3)

20  if "the court finds that the questions of law or fact common to class members

12cv2169 BTM(NLS)

1   predominate over any questions affecting only individual members, and that a

2   class action is superior to other available methods for fairly and efficiently

3   adjudicating the controversy."

4          The predominance inquiry "tests whether proposed classes are sufficiently

5   cohesive to warrant adjudication by representation" and "focuses on the

6   relationship between the common and individual issues." Hanlon, 150 F.3d at

7   1022 (internal quotation marks and citation omitted).   "When common questions

8   represent a significant aspect of the case and they can be resolved for all members

9   of the class in a single adjudication, there is a clear justification for handling the

10  dispute on a representative rather than on an individual basis."  7AA Wright &

11  Miller, Federal Practice and Procedure § 1778 (3d ed. 2011).  When one or more

12  of the central issues in the action are common to the class and can be deemed to

13  predominate, certification may be proper under Rule 23(b)(3) even though other

14  important matters, such as damages or affirmative defenses, will have to be tried

15  separately. Id.

16         Common issues predominate in this litigation.  The central inquiry in this case

17  is whether Defendant violated the TCPA by placing autodialed calls to the cellular

18  telephones of Plaintiff and other class members.

19         In addition, class treatment is the appropriate vehicle to resolve this

20  controversy.   Pursuant to Rule 23(b)(3), the Court should consider four non-

12cv2169 BTM(NLS)

exclusive factors when considering whether class action is a superior method of adjudication, including: (1) the class members' interest in individual litigation, (2) other pending litigation, (3) the desirability of concentrating the litigation in one forum, and (4) difficulties with the management of the class action.

Here, the damages for each class member would be small.  Therefore, class members would have little motivation to pursue individual cases.  Furthermore, due to the common issues in this case, it is desirable to litigate the claims in one forum to ensure consistency of rulings and findings.  The parties are unaware of any competing litigation, and the Court need not be concerned regarding any difficulties with management of the class action due to this settlement.

In sum, the Court finds that the requirements or Rule 23(a) have been satisfied and certifies the Settlement Class under Rule 23(b)(3).

### 2.  Fairness, Reasonableness, and Adequacy of the Settlement

#### a.  Terms of the Settlement

●    The Settlement provides for a Settlement Fund of a minimum of $2,500,000 ("Minimum Payment") and a maximum of $5,000,000 ("Maximum Payment"). (Section 5.01.)  After Settlement Costs (including administration costs and attorney's fees) are deducted from the Minimum Payment, the remaining amount shall be used to pay each Qualified Class Member $500.  If the amount

6

1  remaining after Settlement Costs are deducted is insufficient to pay each Qualified

2  Class Member $500, Defendant will pay additional amounts into the Settlement

3  Fund as required to pay the Settlement Costs and $500 to each Qualified Class

4  Member.  Provided, however, that Defendant will under no circumstances pay

5  more than a total of $5,000,000, inclusive of the Minimum Payment.

6          ●       In the event the sum necessary to pay Settlement Costs and pay $500

7  to each Qualified Class Member exceeds the Maximum Payment, then the

8  amounts paid to each Qualified Class Member shall be reduced pro rata.

9          ●       If the sum of the Settlement Costs and amounts to be paid to Qualified

10  Class Members does not equal or exceed the Minimum Payment, then the

11  difference shall be distributed to one or more *cy pres* recipients.    The Notice of

12  Class Action Settlement provides that the remaining funds in the Settlement Fund

13  will be divided equally between (1) Center for Democracy and Technology; (2)

14  National Consumers League; and (3) Electronic Privacy Information Center.

15          ●       In no event shall a Qualified Class Member receive more than $500.

16          ●       Class Counsel agree that their request for attorney's fees will not

17  exceed $625,000 and that their request for actual expenses incurred will not

18  exceed $100,000, provided that Defendant is not required to pay in excess of the

19  $2,500,000 Minimum Payment to the Settlement Fund.  (Section 6.01.)  In the

20  event that Defendant is required to pay in excess of the $2,500,000 Minimum

Payment, Class Counsel will move the Court for attorney's fees not to exceed 25% of the excess sum over the Minimum Payment in addition to the $625,000, but in no event shall Class Counsel request an award of attorney's fees in excess of $990,000.

### b. Legal Standard

Before approving a class action settlement, the court must determine whether the proposed settlement is fair, reasonable, and adequate.  Fed. R. Civ. P. 23(e)(2).  In reaching this determination, courts consider a number of factors, including:   (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.  Churchill Vill., L.L.C. v. Gen. Elec., 361 F.3d 566, 575 (9th Cir.2004).

When a settlement agreement is negotiated prior to formal class certification, the court must also scrutinize the settlement for evidence of collusion or other conflicts of interest.  In re Bluetooth Headset Products Liability Lit., 654 F.3d 935, 946-47 (9th Cir. 2011).  Signs of collusion include: (1) when counsel receive a

8

disproportionate distribution of the settlement; (2) when the parties negotiate a "clear sailing" arrangement that provides for the payment of attorney's fees separate and apart from class funds; and (3) when the parties arrange for fees not awarded to revert to defendants rather than to be added to the class fund.  Id. at 947.

### c.  Strength of Plaintiff's Case and Risk, Complexity, Expense, and Duration of Litigation

Plaintiff would face substantial risks in continued litigation, which would undoubtedly be time-consuming and costly.   Defendant would oppose class certification on the ground that the class is not ascertainable. (Hoffman Decl. ¶¶ 14-16.)  Defendant also disputes that it placed any calls to Plaintiff or the putative class members without their consent and disputes that it violated the TCPA. Finally, it seems that there are unsettled legal issues regarding whether the TCPA applies to calls to "reassigned numbers" and whether all predictive dialers constitute an ATDS under the TCPA.  (See Hoffman Decl. ¶¶ 11-12.)

### d.  Amount Offered in Settlement

Based on the number of claims to date, the Settlement provides a $500 benefit to each Qualified Class Member.  (As of July 17, 2015, 770 claim forms had been filed.  The claims filing deadline is August 26, 2015 (Robin Decl. ¶ 20)).

12cv2169 BTM(NLS)

1   The TCPA allows recovery of $500 per negligent violation.   47 U.S.C. §
2   227(b)(3)(B).   Accordingly, the benefit provided to the class members is
3   substantial.   As set forth in Plaintiff's motion, the recovery in this case is much
4   more than the relief provided in other TCPA class settlements that have been
5   approved.   (Mem. of P & A in Support of Mot. for Final Approval at 13; Hoffman
6   Decl. ¶ 6.) Qualified Class Members will receive a significant cash recovery.

7   Plaintiff calculates that at least $1,554,724.53 will be available in the
8   Settlement Fund to pay Class Members.   Based on the number of claims so far,
9   much of the Settlement Fund will be paid to the *cy pres* recipients.

10   The Notice of Settlement provides that any remaining funds in the Settlement
11   Fund will be divided equally between (1) Center for Democracy and Technology;
12   (2) National Consumers League; and (3) Electronic Privacy Information Center.
13   After the final approval hearing, Plaintiff filed a supplemental submission [Doc. 56]
14   providing more information regarding the *cy pres* recipients.

15   The *cy pres* doctrine allows a court to distribute unclaimed or non-
16   distributable portions of a class action settlement fund to indirectly benefit the
17   entire class.  Six Mexican Workers v. Ariz.Citrus Growers, 904 F.2d 1301, 1305
18   (9th Cir. 1990). When employing the *cy pres* doctrine, unclaimed funds should be
19   put to their next best use, e.g., for "the aggregate, indirect, prospective benefit of

20

1   the class." Nachshin v. AOL, LLC, 663 F.3d 1034, 1038 (9th Cir. 2011) (quoting

2   Masters v. Wilhelmina Model Agency, Inc., 473 F.3d 423, 436 (2d Cir. 2007)).

3        The Ninth Circuit has held that *cy pres* distribution must be "guided by (1) the

4   objectives of the underlying statute(s); and (2) the interests of the silent class

5   members." Six Mexican Workers, 904 F.2d at 1307.  A *cy pres* distribution is an

6   abuse of discretion if there is "no reasonable certainty" that any class member

7   would benefit from it.  Dennis v. Kellogg Co., 697 F.3d 858, 865 (9th Cir. 2012)

8   (quoting Six Mexican Workers, 904 F.2d at 1308)).

9        The purpose of the TCPA is to "protect the privacy interests of residential

10  telephone subscribers by placing restrictions on unsolicited, automated telephone

11  calls to the home and to facilitate interstate commerce by restricting certain uses

12  of facsimile machines and automatic dialers." Satterfield v. Simon & Schuster,

13  Inc., 569 F.3d 946, 954 (9th Cir. 2009) (quoting S. Rep. No. 102-178, at 1 (1991)

14  reprinted in 1991 U.S.C.C.A.N. 1968).  The designated *cy pres* recipients are

15  organizations with missions that include protecting consumer privacy rights.  The

16  Center for Democracy and Technology is an organization that supports laws,

17  corporate policies, and technology tools that protect the privacy of consumers.  The

18  Electronic Privacy and Information Center is an organization that works to protect

19  and defend consumer privacy and to promote the public voice in decisions

20  concerning the future of the internet.  Finally, the National Consumers League is a

11

pioneering consumer advocacy organization, representing consumers on marketplace issues, such as privacy.

Considering the objectives of the TCPA and the interests of the silent class members, the Court finds that the designated *cy pres* recipients are appropriate. The class will indirectly benefit from funds disbursed to the Center for Democracy and Technology, the Electronic Privacy and Information Center, and the National Consumers League.

### e.  Stage of Proceedings & Experience and Views of Counsel

The parties engaged in substantial discovery prior to settlement.  Defendant provided documents and data to Plaintiff, including dialer records that were analyzed by a third-party expert engaged by Plaintiff.  (Mem. of P. & A in Support of Mot. For Prelim. Approval at 4:8-12.)  The parties also participated in a two-day long mediation session before retired Judge Hoffman on May 16-17, 2013, and another full day of mediation on September 11, 2014.  After reaching an initial settlement, the parties engaged in confirmatory discovery, including the production of additional documents and the deposition of Defendant's expert witness.  The parties are in a position to accurately assess the strengths and weakness of their respective positions.  In addition, Class Counsel, who are experienced consumer

12

class action lawyers, are of the opinion that the settlement is fair, reasonable, and adequate.  (Friedman Decl. ¶ 19.)

### f.  Reaction of the Class Members

The reaction of Class Members can be characterized as positive.   No objections have been filed, and there have been only 2 requests for exclusion. (Robin Decl. ¶¶ 18-19.)   No objectors appeared at the final approval hearing.

### g.  Lack of Collusion

Because this settlement was reached prior to class certification, the Court examines the Settlement for evidence of collusion.   Bluetooth, 654 F.3d at 946-47.  There is no indication of collusion.  Class Counsel seek a fee award totaling 25% of the Settlement Fund.  This percentage of recovery is typical and does not represent a disproportionate distribution of the settlement to counsel. Six Mexican Workers, 904 F.2d at 1311.  Although there is a "clear sailing" provision, it does not raise concerns regarding collusion because the attorney's fees are to be paid from the Settlement Fund as opposed to on top of the Settlement Fund.  See, e g., Rodriguez v. West Publishing Corp., 563 F.3d 948, 961 n.5 (9th Cir. 2009).

Moreover, the parties engaged in extensive settlement negotiations and participated in mediation sessions with Judge Hoffman.  The history of the case as

12cv2169 BTM(NLS)

1   well as the substantial benefit provided to the Class by the Settlement indicate

2   there has been no collusion.

3

4   **h.  Notice to the Class**

5   Rule 23(c)(2)(B) provides that the Court must direct to class members "the

6   best notice that is practicable under the circumstances, including individual notice

7   to all members who can be identified through reasonable effort."  It appears that

8   the best notice practicable has been given.  Here, Kurtzman Carson Consultants

9   LLC ("KCC") mailed Postcard Notices to each of the 41,476 persons for whom

10  KCC had a complete physical address.  (Robin Decl. ¶ 16.)  KCC also purchased

11  a total of 140,000,000 internet banner impressions on a variety of websites.  (Id.

12  at ¶ 15.)  Based on an estimated class size of 106,000 Class Members, the notice

13  program reached approximately 77.7% of the estimated class.  (Id. at ¶ 21.)

14

15  **i.  Final Approval**

16  For the reasons discussed above, the Court finds that the Settlement is fair,

17  reasonable, and adequate.   Therefore, the Court grants final approval of the

18  Settlement.

19

20

**B. Motion for Attorneys' Fees, Costs and Incentive Payment**

### 1. Attorney's Fees

Plaintiff seeks attorney's fees in the amount of $625,000 – 25% of the anticipated $2,500,000 Settlement Fund.  However, if the number of qualified class member claims requires a payment by Defendant of more than $2,500,000, Plaintiff requests that the Court award attorney's fees in the amount of 25% of the Settlement Fund but not to exceed $990,000.

The Ninth Circuit has established 25% of a common fund as a benchmark award for attorney's fees.  Six Mexican Workers, 904 F.2d at 1311.  The court may depart from this benchmark percentage if special circumstances indicate that the percentage recovery would be either too small or too large.  Id.  The court's selection of the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case.  Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1047 (9th Cir. 2002).  Such factors include, but are not limited to: (1) the results achieved; (2) the risk involved in the litigation; (3) incidental or nonmonetary benefits conferred by the litigation; and (4) financial burden of the case on counsel.  Id. at 1049-50.

The Court finds that 25% of the Settlement Fund is an appropriate award in this case.  This conclusion is based on the quality of representation by counsel,

15

1  the excellent results achieved for the class, and the real risks of continued

2  litigation.   There does not appear to be a basis for departing from the benchmark

3  percentage.

4      Application of the "lodestar method" may provide a useful "cross-check" as

5  to the reasonableness of a given percentage award.  Vizcaino, 290 F.3d at 1050.

6  Courts commonly use a rough calculation of the lodestar as a cross-check.

7  Hopkins v. Stryker Sales Corp., 2013 WL 496358, at *4 (N.D. Cal. Feb. 6 2013).

8      Here, a rough calculation of the lodestar comes to $277,993.50.  (Mem. of

9  P. & A. in Support of Attorney's Fee Mot. at 15.)   Based on the lodestar, the

10 multiplier is 2.24.  Courts have "routinely enhanced the lodestar to reflect the risk

11 of non-payment in common fund cases."  Vizcaino v. Microsoft Corp., 142 F. Supp.

12 2d 1299, 1305 (W.D. Wash. 2001).  "To restrict Class Counsel to the hourly rates

13 they customarily charge for non-contingent work – where payment is assured –

14 would deprive them of any financial incentive to accept contingent-fee cases which

15 may produce nothing.  Courts have therefore held that counsel are entitled to a

16 multiplier for risk."  Id.

17     Multipliers of 1 to 4 are commonly found to be appropriate in common fund

18 cases.  Vizcaino, 290 F.3d at 1051 n. 6.  Accordingly, the 2.24 multiplier is within

19 the range or reasonableness.

20

16

Accordingly, the lodestar cross-check supports the reasonableness of the requested fees of $625,000.  However, the Court finds that in the event that Defendant is required to pay additional amounts into the Settlement Fund, additional fees would not be warranted.  Therefore, Plaintiff's motion is denied to the extent that it seeks fees beyond the $625,000.

**2.  Costs**

Class Counsel seek $68,470.00 in costs.  Under the Settlement Agreement, Class Counsel may seek up to $100,000 in costs.  (Section 6.01.)  These costs were for mediation, litigation services, experts, and travel.  (See Supp. Ex. in Support of Attorney's Fee Mot. [Doc. 55-1].)  These are the types of expenses routinely charged to paying clients.  See In re Omnivision Tech., 559 F. Supp. 2d 1036, 1048 (N.D. Cal. 2008) (explaining that class counsel "may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters.")  Therefore, the Court grants Class Counsel's request for reimbursement of expenses in the amount of $68,470.00.

**3.  Settlement Administration Costs**

Plaintiff also seeks approval of the Settlement Administration Costs to be paid out of the Settlement Fund.  From the inception of the administration through

17

May 31, 2015, the costs have totaled $250,305.47.  (Robin Decl. ¶ 16.)  These administration costs appear to be reasonable and are therefore approved.

### 4. Incentive Fee Award

Plaintiff seeks an incentive award of $1,500.00 for the Class Representative, Sayan Aboudi.

The Court may, in its discretion, award incentive or service awards to named plaintiffs to "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." Rodriguez v. West Publishing Corp., 563 F.3d 948, 958-59 (9th Cir. 2009).  District courts must carefully scrutinize incentive awards to ensure that they do not undermine the adequacy of the class representatives.  Radcliffe v. Experian Information Solutions, Inc., 715 F.3d 1157, 1165 (9th Cir. 2013).

Class Counsel state that Plaintiff has been active in this litigation and has provided critical information.  He assisted with factual investigation, reviewed settlement proposals, and made himself available for settlement negotiations. (Friedman Decl. ¶ 28.)  In light of the work Plaintiff has done on behalf of the class, the requested incentive award is reasonable and is approved.

### III.  CONCLUSION

For the reasons set forth above, Plaintiff's motion for final approval of the class action settlement is **GRANTED**.  Plaintiff's Motion for Attorney's Fees, Costs, and Incentive Payment is also **GRANTED**.  The Court grants attorney's fees in the amount of $625,000, costs in the amount of $68,470, and an incentive award of $1,500, and approves the payment of Settlement Administration Costs in the amount of $250,305.47 from the Settlement Fund.  A Final Judgment conforming with this Order shall be filed separately.

**IT IS SO ORDERED.**

Dated:  August 18, 2015

Barry Ted Moskowitz, Chief Judge
United States District Court

19

12cv2169 BTM(NLS)